1

2
Judge: Honorable Mary Jo Heston
Chapter: 7

3

4

5

6

7

8
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

9

| | |
|---|---|
| 10   WILLIAM C. GIBSON AND LAUREL GIBSON, | Case No. 21-41090-MJH |
| 11 | Chapter 7 |
| 12           Plaintiffs, | Adv. Case No. 21-04051-MJH |
| 13   v. | COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS |
| 14 | PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6), |
| 15   STEPHEN LEE ATES, | AND 11 U.S.C. §727 (a)(3) AND TO DETERMINE LIABILITY OF |
| 16           Defendant/Debtor. | DEFENDANTS AND DAMAGES OWED TO PLAINTFFS BY DEBTOR STEPHEN |
| 17   and | LEE ATES AND THIRD-PARTY KELLY ANN BRACE IN "RELATED CLAIMS" |
| 18 | UNDER SUPPLEMENTAL JURISDICTION |
| 19   KELLY ANN BRACE, | |
| 20           Defendant/Non-Debtor. | |

21

**COMPLAINT**

22
      Plaintiffs, William C. Gibson and Laurel Gibson ("Plaintiffs"), bring this adversary

23

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 1
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH   Doc 10   Filed 10/15/21   Ent. 10/15/21 15:29:27   Pg. 1 of 51

proceeding pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6), <u>AND</u> <u>11 U.S.C. §</u> <u>727(a)(3)</u> seeking an order/judgment determining that (1) certain claims for debts asserted against the Debtor and Defendant Stephen Lee Ates (hereinafter referred to as "Ates," "Stephen Ates," "Mr. Ates," and the "Debtor") are excepted from discharge, (2) the liability of Debtor Stephen Lee Ates and third-party Kelly Ann Brace to Plaintiffs for Washington state law claims, and (3) the amount of damages (including attorney's fees) Plaintiffs are entitled to recover from Stephen Lee Ates and Kelly Ann Brace under Washington State Law claims.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the claims against the Debtor Ates pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523. This adversary proceeding against Ates is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(H) and (I). This Court has "related to" subject matter jurisdiction over the Plaintiffs' "non-core" claim against third-party Kelly Ann Brace and non-core claims against Ates via supplemental jurisdiction under 28 U.S.C. § 157(b)(3) and (c)(1). Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, Plaintiffs do consent to entry of final orders or judgment by the bankruptcy court.

2. Venue in the Western District of Washington is proper under 28 U.S.C. § 1409(a).

3. This Adversary Proceeding relates to a Chapter 7 petition filed by the Defendant Ates/Debtor now pending in this Court, *In Re Stephen Lee Ates*, Case No. 21-41090-MJH (the "Ates Bankruptcy Case"). Plaintiffs are also concurrently pursuing partially secured claims (pursuant to a writ of attachment) against the Debtor Ates and Defendant

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 2
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH     Doc 10     Filed 10/15/21     Ent. 10/15/21 15:29:27     Pg. 2 of 51

Kelly Ann Brace in *William C. Gibson, et ux., v. Family Classic Homes, Inc. et al*., Pierce County Superior Court, Case No. 20-2-05781-2 (the "State Court Action") which is currently stayed.

4.    The "related to" claims in the State Court Action and contained in this Complaint include equitable and monetary relief in favor of the Plaintiffs and against the Debtor and Defendant Kelly Ann Brace, individually and in their Marital Community, jointly and severally, in the amount of $482,089.00 (at a minimum, not including other statutorily based attorney's fees recoverable under the Washington Consumer Protection Act, RCW 19.86, *et seq*.). (See Notice of Claim against Stephen Lee Ates on file with this Court).

## THE PARTIES

5.    Plaintiffs are a married couple and reside in the State of Washington. They are the legal owners of the real property/residence located in Mason County, Washington which is the subject of the State Court Action against Debtor Ates and Kelly Ann Brace, which was set for trial on July 1, 2021, before the Defendant and Debtor Ates filed for bankruptcy in June 2021.

6.    Family Classic Homes, Inc. ("FCHI") and Ates are the debtors in *separate* Bankruptcy cases pending before this Court. Debtor/Defendant FCHI is a licensed subchapter S corporation registered within the State of Washington. In early June of 2021, the company filed for a Chapter 7 bankruptcy, staying the continuation of the Plaintiffs' State Court Action against the company. This is Mr. Ates/FCHI's second bankruptcy, Mr. Ates previously filed and received a discharge in 2009. Debtor/Defendant Stephen Ates is the sole shareholder and president of FCHI. There are no corporate officers of FCHI, apart from Mr. Ates. In June of

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 3
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 3 of 51

2021, Stephen Ates filed for a Chapter 7 bankruptcy, staying the continuation of the State Court Action case against him individually.

7.     Non-Debtor Defendant Kelly Ann Brace is and was married to Stephen Ates throughout the entirety of the corporation FCHI's existence.  Mr. Ates and Ms. Brace constitute a marital community under the laws of the State of Washington.   Brace and Ates filed for a martial dissolution on July 25, 2019.  However, all acts undertaken by either of them in this matter up until this date were performed by and for the benefit of their marital community.

8.     Debtor Ates operated FCHI as his alter ego, failed to adequately capitalize FCHI and perform corporate formalities required under Washington law, and commingled his personal assets and finances with the assets and finances of FCHI.  As alleged below, Ates committed acts that evidence the use of the corporate shell of FCHI to attempt to shield him from personal liability and exposure for torts, breaches of contract, and other wrongful and/or fraudulent acts committed by him on behalf of himself and his marital community.  Ates is personally liable for all tortious and wrongful conduct alleged below under the "responsible corporate officer" doctrine recognized by Washington law.

**COURSE OF PROCEEDINGS AND DEBTOR'S CONDUCT GIVING RISE TO THE NONDISCHARGEABLE DEBT**

**Insolvency of FCHI due to its liabilities exceeding its assets.**

9.     At all times relevant hereto, FCHI owned no assets, property, equipment, or tools.  The tools that Ates used in connection with FCHI were owned by him personally.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 4
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 4 of 51

1          10.    At all times relevant hereto, FCHI had no substantial receivables.  It generally

2   contracted with parties who made progress payments as the work progresses.  Therefore, at

3   any given time, it did not have any substantial receivables.

4          11.    As of the date of its bankruptcy filing, FCHI filed a schedule of assets and

5   liabilities.  According to this schedule, its total assets at the time of filing the bankruptcy were

6   $366,823.13 in assets, and $1,532,110.66 in liabilities.  However, the totality of the listed

7   assets on the bankruptcy schedules were receivables.  Given that the company is bankrupt

8   under Chapter 7, it is improbable that the company has even this number of receivables, since

9   it will have ceased work in progress on a number of construction projects, thereby making

10  collection of such receivables difficult.

11         12.    Since August of 2015, through the present date, FCHI has had significant

12  unpaid outstanding tax liabilities.  The company had Notice of Federal Tax Liens filed against

13  it on 08/19/15 in the amount of $15,018.23; a Notice of Federal Tax Lien filed against the

14  company on 2/1/16 for $10,748.08; a Notice of Federal Tax Lien filed against the company on

15  3/21/16 in the amount of $11,173.10; a Notice of Federal Tax Lien filed against the company

16  on 5/2/16 in the amount of $36,893.88; and a Notice of Federal Tax Lien filed against the

17  company on 3/20/17, in the amount of $5,257.18.

18         13.    In addition to the above tax liens, FCHI also had a tax warrant filed by the

19  Department of Employment Securities on 9/1/16.

20         14.    At all times relevant hereto, including from August of 2015, through the

21  present date, FCHI's liabilities exceeded its assets.

22

23

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 5
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 5 of 51

**Insolvency of FCHI due to it being unable to pay its debts in the ordinary course of business.**

15.     In addition to the foregoing, Family Classic Homes' bank account at Timberland Bank was the subject of at least 6 separate garnishments by the Department of Labor and Industries, for unpaid taxes. This occurred on 6/4/18 in the amount of $1,000; 7/9/18 in the amount of $2,000; on 1/24/19 in the amount of $1,000; on 4/19/19 in the amount of $5,000; on 5/2/19 in the amount of $3,000; and on 6/20/19 in the amount of $3,000.

16.     In addition to the foregoing, between 10/3/18 and 12/20/19, the company's bank accounts at Timberland Bank and Wells Fargo Bank were overdrawn on 28 separate occasions. The account was overdrawn before, during, and after the Gibson project, including virtually every single month during the project. These accounts were overdrawn despite Mr. Ates failure to pay for necessary and promised costs of the Gibson's home construction.

17.     In addition to the foregoing, between 2017 and date, FCHI was the subject of over 13 separate civil lawsuits filed by disgruntled customers, taxing authorities, or unpaid materialmen.

18.     In addition to the above, FCHI repeatedly requested funds from the Plaintiffs before such sums were due, and in order to justify such payments, Mr. Ates repeatedly referred to the company's inability to pay subcontractors and materialmen. Mr. Ates further, repeatedly represented to Plaintiffs that he was "overbudget" on their project.

19.     Further, in relation to the construction of the Plaintiffs' residence, FCHI failed to pay subcontractor sums that were due and owing and this resulted in the filing of a mechanic's lien against the Gibson Residence.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 6
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 6 of 51

20.     Based on the above garnishments, overdrawn bank accounts and unpaid subcontractors, FCHI was not able to pay its debts as they became due in the ordinary course of business before contracting with the Plaintiffs.

**When entering the contract with the Plaintiffs, FCHI was engaged or about to engage in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.**

21.     At the time of contract signing, FCHI had $6,000 total in the two corporate accounts. FCHI had allegedly spent approximately $12,000 on Plaintiffs' plans, permits and clearing. Mr. Ates had spent $57,000 of Plaintiffs' deposit on his personal living expenses, lifestyle, and other unpaid corporate obligations.

22.     At all times relevant hereto, the assets of FCHI were unreasonably small in relation to capitalization required for FCHI to perform the Gibson contract.

**Personal use of the corporate accounts by Steven Ates for his own benefit and the benefit of his marital community.**

23.     At all times relevant hereto, FCHI maintained two bank accounts, one at Timberland Bank and one at Wells Fargo Bank.

24.     Between 8/2/17 and 2/1/21, Ates made a total of 3,308 personal expenditures approximating $647,650.72.

25.     The above figure represents the funds that appear as draws to Steven Ates, according to FCHI's accounting records. However, Ates did not always make entries in QuickBooks for his withdrawals. In 2019 alone Mr. Ates failed to report additional personal withdrawals amounting to more than $90,000, which have been omitted or mischaracterized in the FCHI accounting records. In total, Mr. Ates withdrew more than $190,000.00 from the

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 7
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
**POST OFFICE BOX 2095**
**TACOMA, WA 98401**
**TEL: 206.264.4577**

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 7 of 51

FCHI corporate accounts, for the year 2019, all of which can be attributed to funds requested, and received, for Plaintiffs' construction project.

26.     At all times relevant hereto, Ates also used company employees to perform services of a personal nature at his home, such as chopping wood or maintaining landscaping. Ates did not pay FCHI anything for these services. Yet, the employee's wages were paid by FCHI.

27.     In addition to the above, Ates used materials that were purchased by FCHI for improvements at his personal residence. Ates did not pay FCHI anything for such materials. Yet, the company paid for such materials.

28.     Based on the above, the figure of $647,650.72 represents the minimum amount that Ates has withdrawn from the company within 4 years of the date that this case was commenced. In view of his failure to book all withdrawals, and his use of non-monetary benefits from the company, through the use of company labor and material, his actual withdrawals were likely substantially higher.

29.     Kelly Ann Brace and Stephen Ates formed a marital community since the date of their marriage until July 25, 2020. Kelly Brace did not work and relied on Steven Ates' income from Family Classic Homes to maintain the marital community. Therefore, with the possible exception of the admitted $32,000 that Steven Ates spent on his mistress, all of the draws that he took from the company were used to pay community expenses, and the marital community benefitted accordingly.

**Personal use of the corporate accounts at the Instance of Kelly Brace.**

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 8
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
**POST OFFICE BOX 2095**
**TACOMA, WA 98401**
**TEL: 206.264.4577**

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 8 of 51

30.     In addition to the personal draws by Mr. Ates, Ms. Brace also received money from FCHI.  Despite not working for the company, Ms. Brace personally spent money from the corporate accounts and received payments for her living expenses and for cash distributed by Mr. Ates.

31.     Although most of the above payments were accomplished by Stephen Ates, a multitude of transfers from the company were accomplished at the instance of Kelly Ann Brace, through her use of company debit cards, and through checks written on the company account that were received by her, or used with her knowledge, to pay for her personal expenses.

32.     Ms. Brace routinely accepted and deposited checks made out to her from the corporate accounts.  Ms. Brace was previously Vice President of Family Classic Homes and was aware that neither she nor Mr. Ates had any source of income outside of client deposits made into the corporate accounts.  Despite that knowledge, Ms. Brace spent from the corporate debit card, accepted payments from the corporate accounts and lived off the customer deposits made into those accounts.

33.     During her deposition in the state court action, Ms. Brace reluctantly admitted that, at least, the multitude of QVC purchases from the corporate accounts were made by her.

34.     According to corporate records, there were a total of 342 instances of personal expenses, taken out of FCHI's Timberland and Wells Fargo Bank accounts, by Kelly Ann Brace, between 11/7/17 and 2/2/21, for a total of $45,002.56.  This lengthy pattern of spending indicates both knowledge and intention to convert Plaintiff's funds to Ms. Brace's own personal use.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 9
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 9 of 51

**The Money Taken from the FCHI Corporate Accounts Was Done Without Any Reasonable Equivalent Value Being Received.**

35.     At all times relevant hereto, Mr. Ates did not collect a salary from the corporation and did not have an established rate of compensation.

36.     Nor was Ates an employee of FCHI, at all times relevant hereto.  Mr. Ates did not track his time on an hourly basis.  Nor did FCHI have any agreement to pay him compensation.  In his deposition in the State Court Action, Mr. Ates acknowledged that he did not consider himself to be a FCHI employee, and his receipts (if any) from the company took the form of a shareholder distribution, based on the profits of the company.

37.     At all times relevant hereto, Mr. Ates did not treat his own distributions as wages.  He did not withhold any form of payroll tax from his distributions, whether for social security or Medicare taxes.  Nor did he pay for industrial insurance to the State of Washington, based on his own hours, nor did he make any contributions to the Washington State Department of Employment Securities, based on his own labor.

38.     Similarly, Kelly Ann Brace did not perform any services on behalf of FCHI, whether as an employee or subcontractor.  She likewise did not transfer any property of value to the company, in consideration of her substantial withdrawals.

39.     At all times relevant hereto, FCHI did not receiving anything of value in exchange for the transfers of funds from FCHI to Ates and Brace.

40.     Review of the corporate bank accounts reveals a pattern of spending more indicative of a personal spending account than a corporate business account.

**Failure to Follow Corporate Formalities.**

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 10
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 10 of 51

41.     At all times relevant hereto, Mr. Ates used FCHI's bank accounts as his own personal bank accounts, paying a wide array of personal expenses directly from the company bank accounts.

42.     The expenses paid from the company's bank account include, without limitation, payment on the mortgage to Ates' home, groceries, online purchases, personal auto repairs, clothing purchases, fuel, medical bills, personal travel expenses, payments to personal creditors, rent on his wife Kelly Ann Brace's apartment, personal care services, restaurants, retail store purchases, legal fees for personal expenses, jewelry purchases, veterinarian services, online movies, hotels, and substantial cash withdrawals.

43.     In addition to the foregoing, Stephen Ates made a debit card available to his wife, Kelly Ann Brace, who also made a wide array of personal expenses from the company's bank accounts.

44.     At all times relevant hereto, Mr. Ates drew from the FCHI corporate accounts without regard to corporate liabilities or obligations. Since 2016, this has resulted in corporate insolvency.

45.     At all times relevant hereto, Mr. Ates spent personally out of the FCHI corporate accounts and there was no separation of finances for him personally. He received warnings not to do this from both his accountant and bookkeeper, and therefore this comingling was performed intentionally. Mr. Ates successfully received a debt discharge through bankruptcy in 2009, he is not unfamiliar with that reward.

46.     Ates' failure to separate the company's finances, from his own finances, proves Mr. Ates failed to follow corporate formalities with respect to his company. On

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 11
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH     Doc 10     Filed 10/15/21     Ent. 10/15/21 15:29:27     Pg. 11 of 51

4/19/2012, Ates filed an Amended Annual Report with the Secretary of State's office indicating that he was President of the company, and that his wife, Kelly Ann Brace, was Vice President. Mr. Ates removed Ms. Brace as an officer of the company, without any formal notice to her or consent to action.

**Pattern of Behavior by FCHI and Ates to Drive up Revenue and Drive Down Expenses.**

47.     As noted, due to the insolvency of FCHI, and the high spending habits of its owner Stephen Ates, Defendant Ates was required to keep the company afloat through a pattern of behavior in which he would induce his customers into paying large deposits for purposes of lot preparation and permitting. These deposits were then spent on prior debt and personal lifestyle. Mr. Ates would then induce customers into signing a fixed fee agreement, but then increase its profitability through a combination of increasing its revenue from the contracted amount, while decreasing its expenses through various means, with Mr. Ates pocketing the difference.

48.     At all times relevant hereto, Mr. Ates would engage in a pattern of increasing his billings, by dishonoring the fixed fee nature of the agreement, and by increasing his revenue through charging customers sums as "extras," when the same were already provided for under the fixed fee nature of the agreements. He likewise engaged in a pattern of billing for sums that were not then due under the terms of the agreement.

49.     At all times relevant hereto, Mr. Ates would engage in a pattern of decreasing his expenses, by using low-cost unregistered contractors who were less expensive; by cutting corners and using substandard materials or construction methods; and by placing arbitrary allowances for expenditures that were not identified in the contract. At all times relevant

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 12
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 12 of 51

hereto, there was also a well-established scheme or pattern of not paying subcontractors, which then resulted in delays, and lien filings.

50.     The above pattern of behavior occurred with a multitude of prior customers of FCHI, some of whom have their own independent pending actions against Ates and/or FCHI.

**Inducement to Contract through False Advertising.**

51.     At all times relevant hereto, Ates advertised that FCHI provides the "highest in industry standards" and that he had built more than 1000 homes since 1998.

52.     At all times relevant hereto, Ates solicited misleading and deceptive Google reviews from friends, family, and employees to bolster the on-line image of FCHI. The Google reviews were intended to appear to be reviews by customers.

53.     Plaintiffs relied upon the FCHI Google reviews and his advertised level of experience, in deciding to enter into a contract with FCHI.

**Initial Professional Agreement with Plaintiffs.**

54.     At all times relevant hereto, Plaintiffs owned property with a residence address of 431 NE Haven Lake Dr., Tahuya Washington 98588 directly across the lake and visible from Mr. Ates' residence on Haven Lake in Washington State.

55.     In June of 2018, Plaintiffs entered into a preliminary written Professional Service Agreement (Agreement) with FCHI for preparation of their lot in anticipation of building a residence.

56.     Under the Agreement, Mr. Ates required a $50,000 deposit, upfront, from Plaintiffs for lot preparation, water hookups, power, plans, permit, and anything necessary to obtain a building permit. Those funds were to be held in trust for the specific purpose of

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 13
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 13 of 51

developing the Plaintiffs' lot. Mr. Ates separately required Plaintiffs to use his architect for the plans and use his corporate and personal bank, Timberland, as their construction lender. Under the same terms of that Agreement, FCHI was entitled to separate fees for its services which would be waived in the event the Parties entered into a building contract. Pursuant to the Agreement, Mr. Ates requested an additional $25,000 on January 17, 2019, for installation of a septic system.

### Written Construction Contract Formation.

57. On or about February 25, 2019, the parties entered into a written contract for the construction of the Gibson residence. This contract was for the gross sum of $391,576.00. However, per the Agreement, the previous deposit of $75,000 was to be applied toward the purchase price.

58. The contract was a fixed fee contract. Under the contract, payments would be due to FCHI based on progress to date. Per the contract, FCHI was responsible to pay all costs of construction pursuant to the contract documents.

59. The contract contained a warranty that all work would be performed in accordance with the applicable building codes, and that all work would be performed in a workmanlike manner.

60. The contract called for FCHI to provide competent and suitable personnel to perform the work.

61. The contract called for completion of the residence by mid-June of 2019. Although this specific date does not appear in the contract, the contract contains provisions for completion beyond the agreed date, in the event of circumstances beyond the control of

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 14
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 14 of 51

the contractor.  Concurrent with the execution of the agreement, Ates provided to the Plaintiffs an estimated completion date, in writing, of mid-June 2019, which became incorporated into the agreement by reference.

62.     Under the terms of the contract, Ates was responsible for all designs and permitting. Under the contract, the parties agreed that any changes to the contract be authorized by a written change order signed by the owner and the contractor.

63.     The contract had one attachment that described the promised materials.  Prior to contract signing, Plaintiffs requested clarification regarding the materials list.  Plaintiffs received vague clarifications from Mr. Ates.  Although the contract was signed on February 25, 2019, the materials list was signed several weeks after, on March 17, 2019.  Mr. Ates did not change the materials list to conform to any prior verbal representations.

## Fraudulent Inducement to Contract.

### A.  Intent to use unregistered contractors.

64.     In order to induce the Gibsons into signing the written agreement, Ates committed numerous misrepresentations concerning the manner in which he intended to construct the residence, consistent with the above established pattern of behavior.

65.     According to the contract terms, only qualified, licensed, and registered subcontractors would be used.

66.     Due to large personal draws, Mr. Ates was routinely accepting the lowest bid from a subcontractor.  Unregistered subcontractors were often hired to work on the FCHI projects.  These same illegal subcontractors were then used over the course of many other projects.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 15
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 15 of 51

67.     Ates testified in his deposition, in the State Court Action, that he intended to use the same basic crew on the Gibson residence that he had used on previous jobs.

68.     Ates has acknowledged knowing that some of the subcontractors he was planning to use were unregistered, in violation of Washington State law and the contract between FCHI and Plaintiffs.

69.     At all times relevant hereto, Ates was aware that all 4 subcontractors (which were proven to be unregistered in the State Court Action case via a motion for partial summary judgment) were unregistered, in violation of the contract and RCW 18.27, et seq., at the time of contracting.

70.     Ates intentionally misrepresented his intention to use only registered subcontractors in order induce the Gibsons into signing the construction contract.  The Gibsons relied upon this misrepresentation in entering into the construction contract with FCHI.  The use of registered subcontractors was a material condition to the contract, and the Gibsons would not have entered into the contract, but for this misrepresentation of intent.

B.  Misrepresentation regarding Intent to Build Home per Plans.

71.     Mr. Ates falsely promised the Gibsons that the house would be built in four to five months after the permit was granted.  He falsely promised that he would be scrutinizing the quality of the construction, and that at the end of the project Plaintiffs would receive a full accounting, along with invoices and receipts, explaining all of the costs for their construction.

72.     Plaintiffs reasonably relied on Mr. Ates' promises.

73.     In fact, Mr. Ates had no intention of building the Plaintiffs' home to code or contract, or fulfilling the promises discussed above.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 16
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 16 of 51

74. By July 31, 2018, Mr. Ates had spent all but $8,000 of Plaintiffs' initial payment of $50,000, which was to be held in trust, on other jobs and personal lifestyle.

75. Mr. Ates' contract violations were a part of a deliberate process to keep his costs well below what contract performance would require. Mr. Ates' signatures appear on prior tax filings, acknowledging the corporates gross insolvency. At all times that Mr. Ates was drawing large amounts of money from the corporation, for his personal use, he was fully aware that the corporation would not be able to pay its liabilities.

76. Also, due to the large personal draws from the FCHI accounts, Mr. Ates failed to timely pay subcontractors, or would only partially pay the subcontractors. This resulted in liens to consumers, including the Plaintiffs.

77. Short-paying subcontractors was part of an overall scheme engaged in by Mr. Ates to maximize profit to himself. It is a scheme he used on multiple projects.

78. At the time of contracting, in February 2019, Mr. Ates represented to the Plaintiffs that he would be able to complete construction by mid-June of 2019.

79. Consistent with the above established pattern of behavior with other customers, this was a false and intentionally unrealistic estimate of a completion date, designed to procure the Gibsons as customers.

80. The intentionally unrealistic estimate of a completion date was relied upon by the Gibsons in entering into the contract. The Gibsons would not have entered into the contract, but for these misrepresentations regarding quality of construction, skill of workmanship, and time of completion.

C. Misrepresentation of intent to abide by agreed billing practices.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 17
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 17 of 51

81.     As noted above, the February 2019 contract between the parties calls for a fixed fee contract. It also calls for any change orders to be in writing and to be signed by both parties. It also called for monthly draws being subject to site inspections from Timberland Bank, based on the progress to date.

82.     Consistent with the above established pattern of behavior with other customers, Ates made knowingly false promises at the time of contracting.

83.     Ates had no intention to abide by the promise of a fixed fee contract. He intended at the outset of the project to fraudulently claim increased costs of construction by falsely characterizing as change orders, portions of the work that were already covered by the existing terms of the fixed fee agreement.

84.     Ates had no intention to abide by the requirement that change orders be in writing. Instead, he intended to disregard contract documents regarding quality of materials and opt for the cheapest materials he could procure and pocket the difference.

85.     Mr. Ates likewise did not intend to abide by the provisions relating to progress payments. Instead, he intended to bill for work that he had not yet completed, as he has done repeatedly with previous customers.

86.     The misrepresentations concerning his intent to following contractual payment terms were made to induce the Gibsons into signing the construction agreement. These provisions were material to the Gibsons decision to enter into the agreement, and they would not have entered into the agreement without these promises.

**Willful Acts/Breach of the Contract by FCHI/Ates.**

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 18
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 18 of 51

87.     During the construction of the Gibsons' residence, FCHI/Ates intentionally violated the February 2019 construction contract in multiple ways:

a.      FCHI/Ates failed to complete construction within the time promised. At deposition, Mr. Ates admitted that he had not completed a home construction in five months, since 2011.

b.      FCHI/Ates failed to build the house to code specifically, defective slab, no cross bracing on the deck, lack of venting, defective stairs, and lack of deck railings (banisters and hand grabs). In fact, Mr. Ates either ordered or approved the removal of insulation from the Plaintiffs' slab, prior to installation, and then repeatedly covered it up. Plaintiffs had to perform a core sample to establish the slab defects.

c.      FCHI/Ates failed to correct a known design defect. Mr. Ates admitted, after the fact, that he submitted a defective design to engineering because making the correction was "holding up" the architect.

d.      FCHI/Ates used unregistered subcontractors. Despite promising to use qualified and registered subcontractors, Mr. Ates had predetermined that he would use the same unregistered subcontractors that he had used on previous jobs. During discovery, Mr. Ates repeatedly, falsely represented, that the framers were working under a registered corporation, when no payments were ever issued to that corporation. Plaintiffs had to have Labor and Industry investigate, due to Mr. Ates denials.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 19
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 19 of 51

e.    FCHI/Ates failed to supervise the subcontractors and falsely claimed that he was supervising.

f.    FCHI/Ates failed to construct in a workmanlike manner and continuously covered up defects.

g.    FCHI/Ates failed to pay subcontractors (lien) and falsely claimed he was "over budget" on Plaintiffs' project.

h.    FCHI/Ates substituted inferior materials for those required in the contract, after signing and submitting the materials list to the bank for approval.

88.    Mr. Ates' architect failed to correct a design defect in the Plaintiffs' plans. Mr. Ates was aware of the design defect but planned to "fix it in the field." Mr. Ates did not fix the design defect.

89.    In January of 2019, Mr. Ates told Plaintiffs that he would need more money if they wanted to get started on a septic, even though he already had Plaintiffs' $50,000 deposit from 2018. Despite this, Plaintiffs provided Mr. Ates with a check for an additional $25,000 deposit for the septic system. Those funds were to be held in trust for the specific purpose of installing a septic system. They were not used for that purpose.

90.    Due to Mr. Ates' spending of Plaintiffs' $75,000 deposit, which was to be held in trust, on himself and other debts incurred as result of his personal draws, FCHI became unable to build Plaintiffs' home to code or contract.

91.    A permit was granted on March 8, 2019, and construction of the residence started at that time.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 20
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
**POST OFFICE BOX 2095**
**TACOMA, WA 98401**
**TEL: 206.264.4577**

Case 21-04051-MJH   Doc 10   Filed 10/15/21   Ent. 10/15/21 15:29:27   Pg. 20 of 51

92.     The Plaintiffs' expert in the State Court Action, Dave Stewart, wrote a Report documenting the material substitutions made by Ates/FCHI.

93.     FCHI/Ates sent the first invoice to Plaintiffs on April 25, 2019, for $59,000. There were multiple unpaid subcontractors at that time.  By April 30, 2019, Ates had spent less than $30,000 on expenses related to the Plaintiffs' home construction.  He had collected $134,000 and had $56,000 in the corporate accounts.

94.     In May of 2019, Mr. Ates began complaining about not having enough money to pay for materials.  Mr. Ates repeatedly implied that he was losing money on Plaintiffs' project and that that he/Plaintiffs were overbudget.  This was part of Mr. Ates' pattern of conduct to get his customers to pay, above and beyond, what was both fair and in the contracts.

95.     At all relevant times hereto, Mr. Ates continued this process of submitting invoices to the Plaintiffs while complaining that the Plaintiffs' project was overbudget throughout the project.

96.      Plaintiffs fronted money for materials that were required to be purchased by FCHI under the construction contract.

97.     Plaintiffs agreed to a lesser quality heating system, at their residence, due to Ates' ongoing ruse of being "over budget" on their project.  Mr. Ates' statements regarding being over budget were false.

98.     On June 20, 2019, Mr. Ates gave Plaintiffs a false invoice for costs of materials already required by contract and for plumbing and electrical "upgrades" that were not in the estimates.  Mr. Ates created invoice 394, despite none of the work being performed,

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 21
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 21 of 51

1    in order to receive quick cash out of the Plaintiffs' contingency funds. At the same time Mr.

2    Ates generated Invoice 394, his corporate account was being garnished by the Washington

3    Department of Labor and Industries and he was preparing to take a vacation.

4         99.     In July 2019, Plaintiffs asked Mr. Ates why the concrete basement slab of the

5    residence appeared devoid of necessary components (i.e., under slab insulation, gravel,

6    concrete slab reinforcement) when they looked at trenches cut in the slab. When questioned,

7    Mr. Ates sent photographs to the Plaintiffs showing insulation laid on the ground within the

8    foundation walls (before the slab was to be poured). This was a false statement made to

9    conceal the fact that Mr. Ates ordered the insulation removed from the slab area prior to

10   pouring the slab.

11        100.    When Plaintiffs did a core sample of the basement slab proving no insulation,

12   wire reinforcement, or gravel were in/under the slab, Mr. Ates reacted with hostility and

13   accused the Plaintiffs of trying to "screw" him and he then threatened to stop work. Plaintiffs

14   hired another builder to oversee and supervise the slab corrective work since Mr. Ates

15   provided no site supervision himself.

16        101.    Mr. Ates threats to stop work is part of a pattern of behavior used on other

17   consumers, in addition to Plaintiffs, to coerce acceptance of poor-quality work, contract

18   substitutions, and compensation over and above that agreed to in the contract.

19        102.    At one point in the construction of the Gibsons' residence, a construction

20   engineer provided plans to correct the framing defects caused by the unregistered framers

21   hired by Ates. Plaintiffs asked Mr. Ates to also fix the design defects that had not been

22   addressed. Mr. Ates proposed to disengage a shear wall from its foundation, and move it, to

23

**BAUMAN & WOLF, PLLC**
**POST OFFICE BOX 2095**
**TACOMA, WA 98401**
**TEL: 206.264.4577**

fix the design defect. This proposal was a substantial alteration from the engineering plans with the potential for catastrophic damage to the home. Ms. Gibson insisted that Mr. Ates get engineering approval for any shear wall alteration.

103.   Mr. Ates plan to disengage the shear wall was part of his overall plan to avoid following codes and plans, wherever he could to maximize profit and minimize effort.

104.   Plaintiffs lost space for a stackable washer/dryer hookup on the main floor, due to the design defects not corrected, as promised, by Mr. Ates.

105.   In July 2019, Mr. Ates put his laborer, JC Mesker, in charge of the Gibsons' home construction.

106.   JC was not trained in residential construction and could not read building plans.

107.   In September 2019, Mr. Ates directed that drywall be installed in the Gibson residence. The electrical was not complete, the removal and replacement of portions of the basement slab (to install the missing and required under-slab components) was not complete, venting for appliances and the whole house fan were not installed, and gas piping was not connected to the fireplaces.

108.   Mr. Ates ordered the drywall installed before the necessary electrical, gas and air plumbing/venting was complete because he wanted to get money from Plaintiffs' construction loan.

109.   In October 2019, Plaintiffs were forced to purchase the appliances for the residence (instead of FCHI, pursuant to the construction contract) because Ates claimed FCHI/Ates did not have the funds to advance. Plaintiff have since discovered that between

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 23
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH   Doc 10   Filed 10/15/21   Ent. 10/15/21 15:29:27   Pg. 23 of 51

July and November of 2019, during a time that the FCHI accounts were being garnished, Mr. Ates spent more than $32,000 of Plaintiff's construction funds on his then mistress.

### Termination of the Construction Contract.

110.    During October and November 2019, Mr. Ates threatened to stop work if Plaintiffs did not authorize the bank to distribute all of the remaining funds.

111.    In addition to the on-going defective construction, on December 13, 2019, Plaintiffs discovered that the unregistered finish carpenters hired by Ates had damaged all of cabinet drawer banks in the two kitchens of the residence.

112.    Based on numerous material breaches of the contract by Ates/FCHI, the Plaintiffs terminated the construction contract with FCHI on December 14, 2019.

113.    On or about the time of contract termination, the unregistered finish carpenters for the residence smashed the main floor kitchen quartz counter and concealed that damage with melamine board and paper.

114.    On December 14, 2019, Mr. Ates sent a text message to all subcontractors claiming Plaintiffs owed Ates/FCHI several thousand dollars and advising they were not to communicate with the Plaintiffs.

115.    Concurrent with the Plaintiffs' termination of FCHI from the project, Mr. Ates sent Plaintiffs a letter of termination, falsely claiming that FCHI was owed $70,000. The termination notices were sent at substantially the same time.

116.    Prior to the date of termination of the construction contract, the project was already several months delayed, due to the various defects in FCHI's performance as outlined above. There were also a multitude of unremedied defects as of that date. Furthermore, FCHI

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 24
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 24 of 51

was refusing to perform any other or further work on the project unless and until the Gibsons caused their lender to disburse the remaining portions of available construction financing to FCHI. Ates testified during his deposition that he was demanding sums for future work that he anticipated because he was "afraid" that any of his future work on the project would not be paid.

117.    However, the construction contract between the parties calls for work to be paid in accordance with progress payments. Mr. Ates was demanding payments under the contract that were not due as a precondition to further work.   This was an anticipatory breach of contract by Family Classic Homes, and its refusal to perform further work was tantamount to a wrongful termination of the contact by Family Classic Homes.

118.    Even without this constructive termination of the contract, at the point of contract termination, FCHI/Ates were in substantial material breach of the contract, due to the large number of unremedied construction defects, delays, poor work, and its history of using unregistered contractors.

**Record Keeping and Credibility.**

119.    Mr. Ates' record keeping of FCHI expenditures was not contemporaneous. Expenses were characterized and identified after the fact, applying characterizations favorable to Mr. Ates personally.

120.    Mr. Ates co-mingled all client funds into two different accounts out of which he spent freely for his personal desires.  Mr. Ates personal draws frequently left the corporate accounts overdrawn.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 25
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
**POST OFFICE BOX 2095**
**TACOMA, WA 98401**
**TEL: 206.264.4577**

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 25 of 51

121. At all times material hereto, Mr. Ates altered the FCHI Quick Books reports, after the fact, to hide his spending habits. He intentionally failed to provide accounting to FCHI clients, in furtherance of this concealment. In fact, during discovery, Mr. Ates substantially altered the Profit and Loss statement regarding Plaintiffs' project, in an effort to cover up his theft of their funds.

122. Mr. Ates alterations of corporate recordkeeping (Quickbooks) is pervasive. Few receipts were kept, checks were not identified, and debits were frequently identified after the fact by Mr. Ates. The result is an ad hoc method of accounting that is varied by Mr. Ates according to his audience.

123. Mr. Ates bankruptcy petition and 2018 tax filing claim FCHI had 2018 gross revenue of $996,193.00. However, a personal review of the two corporate bank accounts reveals deposits of more than $1,155,000.00.

124. During discovery in the State Court Action, Mr. Ates reported that he personally withdrew $105,000.00 from the corporate accounts in 2019. In his bankruptcy petition he claimed $85,000.00 in gross income for 2019. However, a review of Wells Fargo and Timberland Bank Accounts reveals he personally spent $197,000.00 from the corporate accounts.

125. At all times material hereto, Mr. Ates submitted false reports to Washington State Department of Labor and Industries regarding JC Mesker's responsibilities, as well as his former construction supervisor, John Dipino, to avoid more than $10,000 in Workers Compensation premiums.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 26
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 26 of 51

126.     Due to Mr. Ates pattern of creating corporate financial records "after the fact",

it is virtually impossible to determine how client deposits and payments were applied.  This

works very much to Mr. Ates favor as he is free to self-identify how client funds were spent.

For example, after Plaintiffs revealed that Mr. Ates had stolen more than $90,000 of their

money, Mr. Ates simply "created" two more versions of the Profit and Loss Statement for

their job.  According to the latest Profit and Loss Statement, Plaintiffs have two foundations

in their home with the equivalent of 150 cubic yards of concrete (the home is less than 2300 ft

sq).

**Washington Consumer Protection Act Violations.**

127.     The unregistered framers used by Mr. Ates on the Gibsons' residence caused

damage to the Plaintiffs' property, by failing to follow engineering plans, causing necessary

delays and corrections.

128.     The unregistered framers caused damage to Plaintiffs by failing to frame, in a

workmanlike manner, consistent with contract representations.

129.     In September of 2019, Mr. Ates hired unregistered subcontractor, Cletus

Lovell, to install tiling in the loft bathroom and main floor bathroom of the Gibsons'

residence.  Mr. Lovell's work was very poor and incomplete.  Plaintiffs had to pay additional

monies to complete and repair all of Mr. Lovell's work, which included reinstallation of the

entire main floor shower, as Mr. Lovell used greenboard to back the tile and did not frame for

the shower surround.

130.     Also, in October 2019, Mr. Ates hired unregistered subcontractors, Pro

Finishers, to paint the interior and exterior.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 27
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH     Doc 10     Filed 10/15/21     Ent. 10/15/21 15:29:27     Pg. 27 of 51

131.     The unregistered painters did a poor job and applied a single coat of paint on the interior and exterior and did not paint the trim.  This work needs to be re-done.

132.     The unregistered subcontractor, Zach Irish, did a poor job of finishing and hanging doors.

133.     After painting, Mr. Ates hired unregistered subcontractor, Zach Irish to install doors trim and cabinets in the Gibsons' residence.

134.     Mr. Ates substituted inferior trim materials and doors and failed to install required facing on the fireplace, wainscot, and built-in cabinets.

135.     The Court in the State Court Action has already found and ruled that FCHI <u>and</u> Ates are liable as a matter of law for three (3) violations of Washington Contractor Registration Act (RCW 18.27, *et seq.*) and the Washington Consumer Protection Act (RCW 198.86, *et seq.*)  The Gibsons have suffered damages (which can and should be trebled up to $25,000, per violation) from the work of the four (4) unregistered contractors, in violation of the Washington Contractor Registration Act (RCW 18.27, *et seq.*) and the Washington Consumer Protection Act (RCW 198.86, *et seq.*).  Mr. Ates has admitted to knowing these subcontractors were unregistered and used all of them on prior or subsequent jobs.

**Corporate Disregard.**

136.     At all times material hereto, Mr. Ates engaged in a practice of mis-characterizing personal expenses as corporate expenses.  For instance:

a.     Although the corporation owns no vehicles, Mr. Ates reported all vehicle insurance payments and all maintenance of the vehicles used by himself and Ms. Kelly Ann Brace, as a corporate expense and thus minimized his income tax liability.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 28
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH     Doc 10     Filed 10/15/21     Ent. 10/15/21 15:29:27     Pg. 28 of 51

b.      Mr. Ates maintained at least four vehicles, including a Corvette, the costs of which he claims as "corporate" expenses.

c.      Mr. Ates paid multiple phone services, used personally by himself and his family, and claims they are "corporate" expenses.

d.      Mr. Ates reported the purchase of expensive jewelry, for his mistress, as a "subcontractor" expense.

e.      Mr. Ates reported meals for himself and his family as corporate expenses.

f.      Mr. Ates mischaracterized large amounts of cash withdrawals, as corporate expenses, by simply failing to account for the same as corporate draws.

g.      Mr. Ates repeatedly mischaracterized large personal cash withdrawals as subcontractor expenses, Labor and Industries payments, and even materials for the Plaintiffs' project.

h.      Mr. Ates characterized payments for his divorce lawyer as a corporate legal expense.

i.      Mr. Ates characterized large personal loan repayments to his sister as corporate expenses.

137.    FCHI and Ates used the corporate form of FCHI to intentionally violate their contractual duties to the Plaintiffs, and that disregard is necessary to avoid unjustified loss to the Plaintiffs.

138.    In effect, Mr. Ates has used FCHI as a personal enterprise, and has stripped the assets of corporation.  Ates used the corporation as an alter ego of himself, as a shareholder.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 29
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 29 of 51

Mr. Ates has essentially disguised his personal accounts as corporate accounts, to avoid liability to both current creditors and past creditors.

139.    Given Mr. Ates' touted construction experience (more than 1,000 homes claimed as built), his abuse of the corporate structure to avoid creditors is knowing and willful.  Mr. Ates has spent years running up substantial corporate debt to fund his personal lifestyle.  This was done intentionally and with full knowledge that his creditor clients would bear the expense.  For instance, in July of 2019, while Mr. Ates was "pleading poverty" to the Plaintiffs, he spent $13,000 of their construction proceeds in less than one week, entertaining his mistress.  Mr. Ates previously filed bankruptcy in 2009 and received discharge for his debts.

### Damages.

140.    By the time of the construction contract termination, Mr. Ates had collected $374,000 from Plaintiffs' and Plaintiffs' construction loan funds and allegedly spent $253,000 on the Plaintiffs' home construction.  FCHI was overdrawn by $1,000 in the corporate accounts at that time. In short, Mr. Ates had stolen more than $120,000.00 from the Plaintiffs.

141.    After contract termination, Plaintiffs received a lien on their property, brought by the plumbing subcontractor, Port Orchard Plumbing. This was despite Mr. Ates invoicing the Plaintiffs for more than $6700 in alleged "plumbing overages" and invoicing the Plaintiffs $16,000 per contract.  Despite Mr. Ates receiving invoices from the plumbing company, in the amount $12,400, he falsely billed Plaintiffs more than $22,700, paid out $5500 and pocketed the rest.  On January 6, 2020, Mr. Ates was still falsely claiming he was "counting his losses" and claiming he would only pay the plumbers if Plaintiffs hired him back.

142.    Plaintiffs will present proof to this Court regarding damages sustained, fixed, and remaining.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 30
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 30 of 51

**Delay Damages.**

143.    Throughout the construction project, Ms. Gibson was taking multiple days off work and delivering materials to the jobsite.

144.    Mr. Ates was not seen on site by Plaintiffs after July 2019, with the exception of one occasion in October 2019 (when Ates was bragging about how much money he was making and trying to get the excavator to go into business with him), and another occasion on December 20, 2019, when Ms. Gibson invited him to inspect the site.

145.    The above breaches of the agreement by FCHI unreasonably delayed the contract for a period of 8 months.

146.    As a result of these unreasonable delays, the Plaintiffs suffered delay damages to be proven at trial.

**Ates' Holding of Plaintiffs' Money in Trust.**

147.    During a deposition in the State Court Action, Debtor and Defendant Ates admitted that when he was getting money from his customers, he was holding them in trust and that is something he "absolutely" agreed to do "for the Gibsons."   This admission is consistent with the contracts between FCHI/Ates and the Gibsons and includes the Plaintiffs' construction deposit moneys and loan funds provided to FCHI/Ates referenced in Paragraphs 57, 58, 89, 90, and 140 above.

COUNT I – AGAINST STEPHEN LEE ATES

(CORE CLAIM FOR NONDISCHARGEABLE DEBT FOR MONEY OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATIONS OR ACTUAL FRAUD)

148.    Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 147.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 31
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
**POST OFFICE BOX 2095**
**TACOMA, WA 98401**
**TEL: 206.264.4577**

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 31 of 51

149.    Debtor Ates operated FCHI as his alter ego, failed to adequately capitalize

FCHI and perform corporate formalities required under Washington law, and commingled

his personal assets and finances with the assets and finances of FCHI.  Mr. Ates made large

corporate distributions as draws, in violation of RCW 23B.06.200.  As alleged above, Ates

committed acts that evidence the use of the corporate shell of FCHI to attempt to shield him

from personal liability and exposure for torts, breaches of contract, and other wrongful and/or

fraudulent acts committed by him on behalf of himself and his marital community.  Ates is

personally liable for all tortious and wrongful conduct alleged below under the "responsible

corporate officer" doctrine recognized by Washington law.  Mr. Ates was fully aware, at all

times, that his corporation was financially incapable of fulfilling its contract obligations to the

Plaintiffs.

150.    <u>Intent to use unregistered contractors</u>. As alleged above, in order to induce the

Gibsons into signing the written construction agreement, Ates committed numerous

misrepresentations concerning the manner in which he intended to construct the residence,

consistent with the above established pattern of behavior.

151.    According to the contract terms, only qualified, licensed, and registered

subcontractors would be used.

152.    Due to large personal draws, and resultant corporate insolvency, Mr. Ates

routinely accepted the lowest bid from a subcontractor.  Often unregistered subcontractors

were hired to work on the FCHI projects.  These same illegal subcontractors were then used

over the course of many other projects.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 32
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 32 of 51

153.    Ates testified in his deposition, that he intended to build the Gibsons' residence using the same basic crew that he had used on previous jobs.

154.    Ates acknowledged knowing that some of the subcontractors he was planning to use were unregistered.

155.    Ates was aware that all 4 subcontractors (which were proven to be unregistered in this case) were unregistered at the time of contracting.    Ates intentionally misrepresented his intention to use only registered subcontractors in order induce the Gibsons into signing the contract.    The promises/misrepresentation were material, false, Ates knew they were false when made, and Ates intended that the promises/representations be acted upon by the Plaintiffs.

156.    Plaintiffs were ignorant of the falsity of the promises/representations; reasonably relied on Mr. Ates' promises/representations; and had the right to rely upon the promises/representations.  The Gibsons suffered damages as a result of the false promises/representations.

157.    <u>Misrepresentation regarding Intent to Build Home per Code, Plans, or Contract.</u>  As alleged above, Mr. Ates falsely promised/misrepresented the house would be built four to five months after the permit was granted.  He falsely promised/misrepresented that he would be scrutinizing the quality of the construction and that at the end of the project Plaintiffs would receive a full accounting, along with invoices and receipts explaining all of the costs for their construction. When asked during deposition in the State Court action, Mr. Ates could not state what building codes applied to Mason County. The

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 33
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 33 of 51

promises/misrepresentation were material, false, Ates knew they were false when made, and Ates intended that the promises/representations be acted upon by the Plaintiffs.

158.    Plaintiffs were ignorant of the falsity of the promises/representations, reasonably relied on Mr. Ates' promises/representations, and had the right to rely upon the promises/representations.  The Gibsons suffered damages as a result of the false promises/representations.

159.    Mr. Ates promised to, but had no intention of, building the Plaintiffs home to plans, code or contract.  The promises/misrepresentation to build the Plaintiffs' home to plans, code or contract were material, false, Ates knew they were false when made, and Ates intended that the promises/representations be acted upon by the Plaintiffs.

160.    Plaintiffs were ignorant of the falsity of the promises/representations, reasonably relied on Mr. Ates' promises/representations, and had the right to rely upon the promises/representations.  The Gibsons suffered damages as a result of the false promises/representations.

161.    By July 31, 2018, before work had even begun, Mr. Ates had spent all but $8,000 of Plaintiffs' $50,000 initial deposit, held in trust, on other jobs and personal lifestyle.

162.    Mr. Ates' contract violations were a part of a deliberate process to keep his costs well below what contract performance would require.

163.    Also due to the large personal draws from the FCHI accounts, Mr. Ates failed to timely pay subcontractors or partially paid subcontractors. This resulted in liens to consumers, including the Gibsons.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 34
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 34 of 51

164.     Short paying subcontractors was part of an overall scheme engaged in by Mr. Ates to maximize profit to himself.  It is a scheme he used on multiple projects.

165.     At the time of contracting, Mr. Ates falsely represented to the Plaintiffs that he would be able to complete construction by mid-June of 2019.  Consistent with the above established pattern of behavior with other customers, this was a false and intentionally unrealistic estimate of a completion date, designed to procure the Gibsons as customers.

166.     The promises/misrepresentation were material, false, Ates knew they were false when made, and Ates intended that the promises/representations be acted upon by the Plaintiffs.

167.     Plaintiffs were ignorant of the falsity of the promises/representations, reasonably relied on Mr. Ates' promises/representations, and had the right to rely upon the promises/representations.  The Gibsons suffered damages as a result of the false promises/representations.

168.     The intentionally unrealistic estimate of a completion date was relied upon by the Gibsons in entering into the contract.  The Gibsons would not have entered into the contract but for this misrepresentation of intent.

169.     <u>Misrepresentation of intent to abide by agreed billing practices</u>.  As alleged above, the contract between the parties calls for a fixed fee contract.  It also calls for any change orders to be in writing and signed by both parties.  It also called for progress payments, based on monthly draws and site inspections from Timberland Bank, based on the progress to date.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 35
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 35 of 51

170.    Consistent with the above established pattern of behavior with Plaintiffs and other customers, Ates made knowingly false promises at the time of contracting.

171.    Ates had no intention to abide by the promise of a fixed fee contract.  He intended at the outset of the project to increase the costs of construction by falsely characterizing as change orders, portions of the work that were already covered by the existing terms of the fixed fee agreement.

172.    Ates had no intention to abide by the requirement that change orders be in writing.  Instead, he intended to unilaterally substitute inferior materials or omit materials altogether to offset his large personal corporate draws.

173.    Ates likewise did not intend to abide by the provisions relating to progress payments.  Instead, he intended to bill for work that he had not yet completed, as he has done repeatedly with previous customers.

174.    The misrepresentations concerning his intent to follow contractual payment terms was done to induce the Gibsons into signing the construction agreement.  These provisions were material to the Gibsons decision to enter into the agreement, and they would not have entered into the agreement without these promises.

175.    The promises/misrepresentation were material, false, Ates knew they were false when made, and Ates intended that the promises/representations be acted upon by the Plaintiffs.

176.    Plaintiffs were ignorant of the falsity of the promises/representations, reasonably relied on Mr. Ates' promises/representations, and had the right to rely upon the

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 36
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
Post Office Box 2095
Tacoma, WA 98401
Tel: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 36 of 51

promises/representations.  The Gibsons suffered damages as a result of the false promises/representations.

177.    Debtor Ates' representations also constitute deceptive acts or practices in violation of the Washington Consumer Protection Act, RCW 19.86, *et seq*.

178.    The total amount of money the Debtors obtained from Plaintiffs, by such false pretenses, false representations, or actual fraud will be proven at trial.

179.    Consequently, the Debtor's debt to Plaintiffs is one for money, property, or services obtained by false pretenses, false representations, or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

COUNT II - AGAINST STEPHEN LEE ATES

(CORE CLAIM FOR NONDISCHARGEABLE DEBT FOR FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY, EMBEZZLEMENT, OR LARCENY)

180.    Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 179 of this Complaint as if set forth fully herein.

181.    Debtor Ates operated FCHI as his alter ego, failed to adequately capitalize FCHI and perform corporate formalities required under Washington law, commingled his personal assets and finances with the assets and finances of FCHI, and took massive personal draws in violation of RCW 23B.06.400.  As alleged above, Ates committed acts that evidence the use of the corporate shell of FCHI to attempt to shield him from personal liability and exposure for torts, breaches of contract, and other wrongful and/or fraudulent acts committed by him on behalf of himself and his marital community.  Ates is personally liable for all tortious and wrongful conduct alleged below under the "responsible corporate officer" doctrine recognized by Washington law.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 37
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 37 of 51

182.    As noted above, during a deposition in the State Court Action, Debtor and Defendant Ates admitted that when he was getting construction funds from his customers, he was holding the funds in trust and that is something he "absolutely" agreed to do "for the Gibsons."   This admission is consistent with the contracts between FCHI/Ates and the Gibsons and includes the Plaintiffs' construction deposit moneys and loan funds provided to FCHI/Ates.

183.    Ates wrongfully took the Plaintiffs' deposit money and construction loan funds, held in trust, for his own personal gain.  Mr. Ates lacked legal justification to use the funds for his own personal gain.  Mr. Ates deprived the Plaintiffs of those monies and did so willfully and without any lawful justification.

184.    Ates unlawfully embezzled, converted, and/or defalcated certain sums of the construction moneys the Plaintiffs provided to FCHI/Ates, to be held in trust, referenced in Paragraphs 61, 62, 94, 95, and 140 above, in violation of Washington law.

185.    Because of this conversion, defalcation, and embezzlement, the Plaintiffs suffered damages in an amount to be proven at trial.

186.    Consequently, the Debtor Ates' debt to Plaintiffs is one for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

COUNT III - AGAINST STEPHEN LEE ATES

WASHINGTON CONSUMER PROTECTION ACT (RCW 19.86, ET SEQ.) VIOLATIONS BY ATES FOR "DECEPTIVE ACTS AND PRACTICES" - CORE CLAIM FOR NONDISCHARGEABLE DEBT FOR MONEY OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATIONS OR ACTUAL FRAUD)

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 38
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 38 of 51

187.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 186 of this Complaint, as if set forth fully herein.

188.     Debtor Ates operated FCHI as his alter ego, failed to adequately capitalize FCHI and perform corporate formalities required under Washington law, and commingled his personal assets and finances with the assets and finances of FCHI.  As alleged above, Ates committed acts that evidence the use of the corporate shell of FCHI to attempt to shield him from personal liability and exposure for torts, breaches of contract, and other wrongful and/or fraudulent acts committed by him on behalf of himself and his marital community. For multiple years Mr. Ates knowingly took large personal draws from the corporation in violation of RCW 23B.06.200.  Ates is personally liable for all tortious and wrongful conduct alleged below under the "responsible corporate officer" doctrine recognized by Washington law.  Mr. Ates was fully aware that his conduct was illegal under Washington law as is evidence by his signature on federal tax reporting documents and his alterations of corporate financial records.

189.     Debtor/defendant Ates violated the Washington Consumer Protection Act by providing substandard work on and for the Gibsons' Residence, hiring and using unlicensed and unregistered contractors and workers to perform work on the Gibsons' Residence, concealing defects and asserting they were not present, using and/or diverting contract payments by Plaintiffs to pay other corporate and personal debts of FCHI and Ates (instead of using it on the materials and licensed contractor labor required under the contract with Plaintiffs and RCW 18.27 *et seq*.), and using materials paid for by Plaintiffs on other jobs and/or own Ates' personal residence.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 39
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH     Doc 10     Filed 10/15/21     Ent. 10/15/21 15:29:27     Pg. 39 of 51

190.    Ates falsely promised, on repeated occasions, and never intended to complete work on the Gibsons' Residence, by the deadlines set in multiple "schedules" Ates provided to the Plaintiffs.  Ates made false promises regarding completion times and costs to multiple prior clients and to Plaintiffs.  Those misrepresentation constitute deceptive acts/practices in violation of RCW 19.86 *et seq*.; *Keyes v. Bollinger*, 31 Wash. App. 286, 640 P.2d 1077 (1982).

191.    In violation of Washington law and the contract, Ates secretly hired and used unregistered subcontractors during multiple aspects of the build of the Gibsons' Residence.  The unregistered subcontractors were unskilled and did not perform work in a workmanlike manner and/or to code or contractual standards.

192.    Ates engaged in "bait and switch" tactic of false representations and promises in advertising and practice, in order to lure business away from other reputable builders in the industry.

193.    The acts and omissions, such as those described above in the afore-mentioned paragraphs, have the capacity to deceive a substantial portion of the public.

194.    The violations of RCW 18.27, *et seq*., regarding the use of unregistered sub-contractors, is a per se violation of RCW 19.86, *et seq*.

195.    Ates' acts and omissions occurred in its/his business of construction which is occurring within trade and commerce.

196.    Ates' acts and omissions are repeatable and concern the public interest in the effects this type of work has on the public and their property.  Plaintiffs have learned of other

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 40
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 40 of 51

victims of the deceptive acts/practices by Ates, related to the Ates' construction of residences for those victims. Those victims can be witnesses at the trial of this matter.

197.    Ates' acts and omissions with regard to falsely promised completion deadlines, false billing, and failure to pay sub-contractors, in violation of contract, is a tactic used on other clients of Ates' and concerns public interest.

198.    As noted above, the Court in the State Court Action has already found and ruled that FCHI <u>and</u> Ates are liable as a matter of law for three (3) violations of Washington Contractor Registration Act (RCW 18.27, *et seq*.) <u>and</u> the Washington Consumer Protection Act (RCW 198.86, *et seq*.) The Gibsons' damages can and should be trebled up to $25,000, per violation, from the work of the four (4) unregistered contractors in violation of the Washington Contractor Registration Act (RCW 18.27, *et seq*.) and the Washington Consumer Protection Act (RCW 198.86, *et seq*.).

199.    Plaintiffs were damaged in their property by the "deceptive acts and practices" of Ates in an amount to be proven at trial.

200.    Ates' "deceptive acts and practices" violations of RCW 19.86, *et seq*. are a proximate cause of Plaintiffs' injury in and to their property, the Gibsons' Residence, and for financial/monetary damages to Plaintiffs, in an amount to be proven at trial.

201.    Mr. Ates' actions were knowing and willful and part of a years long practice of false promises, bait and switch and deceptive misuse of the corporate structure. At all times Mr. Ates was fully aware of the consequences to his creditor clients. He has worked his entire life in the construction industry and has owned and operated Family Classic Homes since

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 41
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 41 of 51

1998.  He took his business and himself through a successful bankruptcy discharge in 2009.

Multiple other families have suffered losses similar to the Plaintiffs due to Mr. Ates scheme.

202.    Consequently, the Debtor Ates' of RCW 19.86, *et seq.* "deceptive acts and practices" debt to Plaintiffs is one for money, property, or services obtained by false pretenses, false representations, or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

### COUNT IV - AGAINST STEPHEN LEE ATES – CORE CLAIM FOR NONDISCHARGEABLE DEBT FOR WILLFUL OF MALICIOUS INJURY UNDER 11 U.S.C. § 523(a)(6)

203.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 202 of this Complaint, as if set forth fully herein.

204.    Plaintiffs sustained injuries by the willful and malicious actions and omissions of Mr. Ates, in persona, and as alter ego of FCHI.  While some instances were pre-designed with reckless disregard, other actions taken Mr. Ates were known by him to have a damaging effect on Plaintiffs' property.

205.    Mr. Ates intentionally removed code required components from Plaintiffs' slab and then made material misrepresentations about its condition.  Mr. Ates used corporate funds to perform a substandard correction on the slab and applied the costs to proceeds from Plaintiffs' construction.

206.    Mr. Ates intentionally hired unregistered and poorly qualified subcontractors and then willfully failed to supervise, in order to maximize his profit.

207.    Mr. Ates falsely invoiced Plaintiffs for materials required by contract thus "double billing" Plaintiffs for the same.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 42
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 42 of 51

208.    Mr. Ates invoiced and collected sales tax on materials not purchased.

209    Mr. Ates billed and collected money for payment of plumbing and then failed to pay the plumber causing Plaintiffs to suffer a lien and double pay for that service.

210.    Mr. Ates intentionally submitted a defective home design for engineering and then failed to correct the defect after promising to do the same.

211.    Mr. Ates spent corporate money intended for the Plaintiffs project, on himself and insiders, knowing that the corporation would be unable to complete the Plaintiffs project.

212.    Mr. Ates repeatedly, falsely represented that Plaintiffs' project was over budget to induce Plaintiffs in purchasing materials, with their own funds, and to justify delays and extra costs.

213.    Mr. Ates repeatedly falsely represented that he was underpaid to coerce Plaintiffs into authorizing invoices that Mr. Ates was not entitled.

214.    Mr. Ates altered corporate records and made misrepresentations during discovery, which evidences both knowledge and intent.

2145.   Mr. Ates' practice of using subsequent customer funds to finance prior jobs and personal lifestyle demonstrate a pattern of knowledge and recklessness with regard to Plaintiffs interests.

216.    Mr. Ates conversion of, at least, $120,000 of Plaintiffs' money was both willfully malicious and constitutes Theft under Washington State Law.

217.    Consequently, the willful and malicious acts of Debtor Ates' has caused injury to Plaintiffs and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

COUNT V - AGAINST STEPHEN LEE ATES

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 43
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 43 of 51

## BREACH OF CONTRACT – NON-CORE CLAIM UNDER SUPPLEMENTAL JURISDICTION

218.    PLAINTIFFS repeat and reallege the allegations of ¶¶ 1 through 217 of this Complaint as if set forth fully herein.

219.    Ates operated FCHI as his alter ego, failed to adequately capitalize FCHI and perform corporate formalities required under Washington law, and commingled his personal assets and finances with the assets and finances of FCHI.  As alleged above, Ates committed acts that evidence the use of the corporate shell of FCHI to attempt to shield him from personal liability and exposure for torts, breaches of contract, and other wrongful and/or fraudulent acts committed by him on behalf of himself and his marital community.  Ates is personally liable for all tortious and wrongful conduct alleged below under the "responsible corporate officer" doctrine recognized by Washington law.

220.    Ates failed to supervise the registered and unregistered sub-contractors or monitor the quality of their work. Ates unlawfully hired and used unregistered and poorly skilled sub-contractors to maximize personal profits.

221.    Ates repeatedly failed to purchase materials and procure labor which delayed performance under the contract and damaged the Plaintiffs.  At the construction contract termination, FCHI and Ates were 10 months into a 5 month build and were still causing damage to the Gibsons' Residence.  Plaintiffs suffered loss of use of the Gibson Residence while paying on the construction loans for the Gibson Residence. Plaintiffs suffered economic loss by paying the higher interest rate required on the construction loan as opposed to a conventional loan.

222.    Ates billed Plaintiffs for costs not yet expended, and then pocketed the money

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 44
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 44 of 51

paid by Plaintiffs for those costs and used the payments to pay off unrelated debts of FCHI and Ates. This caused Plaintiffs to spend additional sums of their own money to finish the construction of the Gibson Residence and a lien against the Gibson Residence for services paid for to FCHI and Ates.

223. Ates overbilled Plaintiffs for "cost plus" line items and overbilled Plaintiffs for electrical add-ons and plumbing add-ons that were not provided. Ates charged the Plaintiffs tax for materials and services not paid on or for the Gibson Residence.

224. Throughout the project, Ates substituted cheap and inferior materials, without permission of the Plaintiffs.

225. Ates breached the Contract for the construction of the Gibson Residence by failing to correct design defects and failing to build to code, plans, and contract. The Gibson Residence has both design and construction defects which have resulted in its diminished value. Plaintiffs have incurred significant expense in repairing faulty work and repairing actual damage sustained (unbraced deck, damaged cabinets, holes in the floors, wavy walls and floors, poorly applied molding, doors hung crooked, wrong sized materials, broken quartz countertop, etc.).

226. Throughout the build, Ates mis-appropriated corporate funds, and funds held in trust designated for completion of the Gibson Residence and used those funds for his own personal gain. The Plaintiffs have incurred significant expenses as a result of the misappropriation by delays in completion, faulty workmanship, and inferior materials.

227. The wrongful acts and omissions of the Defendant Ates constitute breach of contract for the construction of the Gibson Residence for which Plaintiffs are entitled

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 45
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 45 of 51

to recover actual, compensatory, consequential, and general damages in amounts to be proven at trial.

COUNT VI - AGAINST STEPHEN LEE ATES

UNJUST ENRICHMENT – NON-CORE CLAIM UNDER SUPPLEMENTAL JURISDICTION

228.    Plaintiffs incorporate by reference paragraphs 1 through 227 of this Complaint as if set forth fully herein.

229.    Ates operated FCHI as his alter ego, failed to adequately capitalize FCHI and perform corporate formalities required under Washington law, and commingled his personal assets and finances with the assets and finances of FCHI.  As alleged above, Ates committed acts that evidence the use of the corporate shell of FCHI to attempt to shield him from personal liability and exposure for torts, breaches of contract, and other wrongful and/or fraudulent acts committed by him, on behalf of himself and his marital community.  For years Mr. Ates has violated the Washington Business and Corporations Act. Ates is personally liable for all tortious and wrongful conduct alleged below under the "responsible corporate officer" doctrine recognized by Washington law.

230.    In obtaining money from Plaintiffs, then not performing the required/sufficient work, Ates has been unjustly enriched by said transfer of funds and his inaction. Ates has been unjustly enriched by charging Plaintiffs and receiving money from them for work that was not completed.

231.    Plaintiffs are entitled to restitution of benefits and value conferred unjustly on Ates.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 46
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
**POST OFFICE BOX 2095**
**TACOMA, WA 98401**
**TEL: 206.264.4577**

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 46 of 51

COUNT VII – <u>CORE CLAIM</u> AGAINST STEPHEN LEE ATES <u>FOR FAILURE TO KEEP BOOKS AND RECORDS AND FALSIFYING BUSINESS RECORDS 11 U.S.C. § 727(a)(3)</u>.

232.    Plaintiffs incorporate by reference paragraphs 1 through 231 of this Complaint as if set forth fully herein.

233.    At all relevant times, FCHI was a liquid only asset entity whose significant assets, in 2018 and 2019, included the Gibson Residence Construction Project and the proceeds from the Timberland Bank construction loan and other loans taken out by Plaintiffs to fund the construction of the Gibson Residence by FCHI.

234.    FCHI had multiple customers paying at various times as work progressed.  Mr. Ates co-mingled all customer funds into two different accounts.  Mr. Ates then transferred money back and forth between with accounts without explanation or purpose.  Mr. Ates spent freely from the corporate accounts using customer proceeds for his mistresses, vehicles, personal life, entertainment, mortgage, divorce lawyer, spousal support, mortgage, groceries, etc.  The corporate bank accounts show massive cash withdrawals and transfers without explanation.  A multitude of checks are written without identifying whether it was a project for client or Mr. Ates' personal residence.

235.     Mr. Ates has fabricated corporate profit and loss statements during discovery. His QuickBooks reports are created *ad hoc*, loosely based upon the bank transactions with minimal receipts to account for debits.  Plaintiffs have been able to identify a few mischaracterizations only after an exhaustive comparison of various profit and loss statements, bank records and documents obtained from Mr. Ates' divorce court file and their own particularized knowledge of their project.

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 47
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 47 of 51

236.     Mr. Ates did not preserve receipts for expenses paid on the Plaintiffs' project. When his own accounting of spending was called into question, Mr. Ates falsely identified expenses for other projects as expenses on behalf of the Plaintiffs' project.  It was only through vendor subpoena that Plaintiffs have been able to demonstrate the falsity of Mr. Ates' records.

237.     Mr. Ates' bankruptcy petition claims income far below what appears in the corporate bank accounts.  His 2018 tax return also reflects income significantly below the deposits made into the corporate accounts.  His tax filing contains an accountant disclaimer that no figures were verified and are based upon Mr. Ates' reports and can only be verified through a laborious review of bank records which are replete with electronic debit transaction.

238.     Mr. Ates' failure to maintain contemporaneous or accurate business records is knowing, willful, and unjustified given his 20-plus years operating Family Classic Homes Inc., his self-reported 1,000 homes built, his admission that he has been repeatedly admonished by his bookkeeper and professional accountant to maintain separate accounts, and his previous bankruptcy filing to 2009.  Mr. Ates' falsification of profit and loss statements is intentional and designed to avoid accountability to creditors.  The overall reckless and intentional disregard of the basic accounting principle of collecting receipts combined with a purposeful failure to maintain separate personal and client accounts, makes it impossible to ascertain his business transactions or financial condition.

239.     Consequently, due to Mr. Ates' knowing and willful failure to keep books and records and falsifying business records, Mr. Ates should be denied discharge under 11 U.S.C. § 727(a)(3).

### COUNT VIII - AGAINST KELLY ANN BRACE INDIVIDUALLY FOR CONVERSION – NON-CORE CLAIM UNDER SUPPLEMENTAL JURISDICTION

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 48
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 48 of 51

240.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 239 of this Complaint, as if set forth fully herein.

241.     At all relevant times, Ms. Brace was aware that she had no possessory interest in the money held in the FCHI bank accounts.

242.     At all relevant times, Ms. Brace was aware that FCHI business accounts were funded by client construction funds.

243.     The checks and deposits, referred to above, were placed into the corporate accounts by Mr. Ates and were for the sole purpose of completing Plaintiff's residence.

244.     Plaintiffs had a possessory interest in that money.

245.     Ms. Brace deprived the Plaintiffs of their money willfully and without justification.

246.     Because of this conversion, Plaintiffs suffered damage in an amount to be proven at trial.

247.     Ms. Brace is individually liable to Plaintiffs for her own intentional conversion as well as conversion committed in concert with Mr. Ates.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray for entry of judgment against the Debtor Stephen Lee Ates/Defendants Stephen Lee Ates and Kelly Ann Brace as follows:

A.   That the Court determine that a monetary portion of the damages suffered by the Plaintiffs is non-dischargeable as to Stephen Lee Ates pursuant to 11 U.S.C. § 523(a)(2)(A);

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 49
Cause No. No. 21-41090-MJH

BAUMAN & WOLF, PLLC
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH     Doc 10     Filed 10/15/21     Ent. 10/15/21 15:29:27     Pg. 49 of 51

B. Enter judgment for the Plaintiffs and against the Debtor Stephen Lee Ates for damages suffered by the Plaintiffs that are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), in the amount proven at trial, plus applicable interest in accordance with 28 U.S.C. § 1961;

C. That the Court determine that a monetary portion of the damages suffered by the Plaintiffs is non-dischargeable as to Stephen Lee Ates pursuant to 11 U.S.C. § 523(a)(4);

D. Enter judgment for the Plaintiffs and against the Debtor Stephen Lee Ates for damages suffered by the Plaintiffs that are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4), in the amount proven at trial, plus applicable interest in accordance with 28 U.S.C. § 1961

E. That the Court determine that a monetary portion of the damages suffered by the Plaintiffs is non-dischargeable as to Stephen Lee Ates pursuant to 11 U.S.C. § 523(a)(6);

F. Enter judgment for the Plaintiffs and against the Debtor Stephen Lee Ates for damages suffered by the Plaintiffs that are non-dischargeable pursuant to 11 U.S.C. § 523 (a)(6) in the amount proven at trial, plus prejudgment interest, plus applicable interest in accordance with 28 U.S.C. § 1961;

G. Enter a judgment for the Plaintiffs for damages recoverable from under the "non-core" claims pleaded above against the Debtor/Defendant Stephen Lee Ates and Defendant Kelly Ann Brace, and their marital community, jointly and severally, in the amount

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND 11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 50
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
POST OFFICE BOX 2095
TACOMA, WA 98401
TEL: 206.264.4577

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 50 of 51

proven at trial, plus applicable pre-judgment interest under state law, and post-

judgment interest in accordance with 28 U.S.C. § 1961;

H.  That the Court determine that a monetary portion of the damages suffered by the

Plaintiffs is non-dischargeable as to Stephen Lee Ates pursuant to 11 U.S.C. §

727(a)(3);

I.  Enter a judgment against Ms. Brace individually for the "non-core" claim of

conversion plus applicable pre-judgment interest under state law.

J.  For an award of attorney's fees as allowable by law in an amount the Court determines

as reasonable;

K.  For Costs of the suit incurred herein, and

L.  For such other and further relief as this case may require and the Court deems just and

proper.

Dated: October 15, 2021.

**Respectfully Submitted,**


**By:   _s/:Bradley S. Wolf_____**
Bradley S. Wolf, WSBA 21252
Attorneys for the Plaintiffs
Bauman & Wolf, PLLC
Post Office Box 2095
Tacoma, WA 98401
Tel: 206.264.4577
Email: bwolf@wolflaw.us

ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6) AND
11 U.S.C. § 727(a)(3) AND FOR OTHER RELIEF - PAGE 51
Cause No. No. 21-41090-MJH

**BAUMAN & WOLF, PLLC**
**POST OFFICE BOX 2095**
**TACOMA, WA 98401**
**TEL: 206.264.4577**

Case 21-04051-MJH    Doc 10    Filed 10/15/21    Ent. 10/15/21 15:29:27    Pg. 51 of 51